UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ZACHARY LINCOLN,

        Plaintiff,

    v.

SWEET HOME FIRE & AMBULANCE
DISTRICT; MARK NICHOLAS
TYLER, *individually and in his capacity as
Fire Chief*; DAVID BARRINGER,
*individually and in his capacity as Fire Chief*;
TIMOTHY DONEY, *individually and in his
capacity as Investigator*,

        Defendants.

Case No. 6:24-cv-00610-MTK

**OPINION AND
ORDER**

——————————————————————

**KASUBHAI,** United States District Judge:

        Self-represented Plaintiff Zachary Lincoln ("Plaintiff") brings this action against the

Sweet Home Fire and Ambulance District ("Sweet Home Fire"), Chief Mark Nicholas Tyler

("Tyler"), Chief David Barringer ("Barringer"), and Timothy Doney ("Doney") in their

individual and official capacities (collectively, "Defendants"). First Am. Compl. ("FAC"), ECF

No. 16. Plaintiff alleges constitutional and civil rights claims under 42 U.S.C. § 1983, as well as

Oregon statutory claims. Defendants move to strike Plaintiff's FAC under Fed. R. Civ. P. 12(f) and dismiss Plaintiff's FAC under Fed. R. Civ. P. 12(b)(6). Defs.' Mot. Strike and Mot. Dismiss ("Defs.' Mot."), ECF No. 20. For the reasons discussed below, Defendants' Motion to Strike is denied and Defendants' Motion to Dismiss is granted.

## BACKGROUND

The following allegations are taken as true for purposes of ruling on the present motions.

Plaintiff was a "Firefighter/Paramedic" employed by Sweet Home Fire. FAC ¶ 1. Plaintiff alleges a series of events that took place during his employment between 2012 and 2023 that ultimately led to him being terminated from his position.

On May 18, 2018, Plaintiff responded to a service call which resulted in exposure to a used syringe needle. *Id.* ¶ 18. Two other Sweet Home Fire employees and a hospital employee allegedly conspired to give Plaintiff a false positive human immunodeficiency virus ("HIV") result as a prank. *Id.* ¶¶ 23-26. The two Sweet Home Fire employees were disciplined. *Id.* ¶ 27. Plaintiff alleges that he suffers from anxiety and that, on July 22, 2022, he learned that the "[d]istrict[']s insurance's psychiatrist . . . attributed all of Plaintiff's anxiety-related symptoms to the 2012 HIV incident." *Id.* ¶ 86.

Separately, Plaintiff alleges a series of disagreements with his supervisor, Barringer, between 2020 and 2023 about various administrative decisions. For example, the two disagreed about the manner of a planned bunk room renovation, whether and how to update a camera system or build new desks, and Plaintiff's involvement in several personnel matters with his coworkers. *Id.* ¶¶ 35-41, 44-48.

The remainder of Plaintiff's FAC relates to an investigation that took place from May 2022 to March 2023 regarding Plaintiff's alleged misuse of sick leave. *Id.* ¶¶ 70-133. Plaintiff

was placed on administrative leave for eleven months, and ultimately terminated from his position on March 29, 2023. *Id.* ¶¶ 43, 72, 131, 145.

## PROCEDURAL HISTORY

On June 28, 2024, Defendants filed a motion for a more definite statement and motion to dismiss. ECF No. 8. Plaintiff did not respond and on July 25, 2024, the Court issued a show cause order advising Plaintiff to show cause in writing within 30 days why the case should not be dismissed for failure to prosecute. ECF No. 13. Plaintiff did not respond and on October 4, 2024, the Court issued a Findings and Recommendation, recommending dismissal for failure to prosecute. Findings and Recommendation ("F&R"), ECF No. 14. On October 8, 2024, however, Plaintiff reengaged with the case by filing an objection to the F&R and by filing his FAC. ECF Nos. 16-17. The Court vacated the F&R and allowed the case to proceed by denying Defendants' motion as moot in light of Plaintiff's amendment to the Complaint. ECF No. 18.

On October 18, 2024, Defendants moved to strike and to dismiss the FAC. Defs.' Mot. Deadline for Plaintiff's response was fourteen days later, November 1, 2024. Local Rule ("LR") 7(e)(1). On November 8, 2024, Defendants filed a Reply in Support of their Motion, noting Plaintiff's failure to respond. ECF No. 21. Without leave, Plaintiff filed a response to Defendants' Motion on November 11, 2024. Pl.'s Resp. in Opp. to Defs.' Mot. ECF No. 22. On November 18, 2024, Defendants then filed an Amended Reply in Support of their Motion. ECF No. 23. Twenty-one days later, on December 9, 2024, Plaintiff filed a second response in opposition to Defendants' Motion. ECF No. 25.

Given Plaintiff's repeated failure to timely respond and participate in this case, the Court will not consider either of Plaintiff's responses in opposition to Defendants' Motion, both of which were untimely. Nor will the Court consider Defendants' Reply or Amended Reply, which

were improperly filed. LR 7-1(e)(2) (a reply brief may only be filed after service of a response); LR 7-1(e)(3) ("Unless directed by the Court, no further briefing is allowed.").

## STANDARDS

### I.     Motion to Strike – Fed. R. Civ. P. 12(f)

A court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is to help "avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir. 2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). However, motions to strike are generally disfavored and infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (quotation marks and alterations omitted)).

Courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike. *Whittlestone*, 618 F.3d at 973. "A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Contreras, ex rel. Contreras v. Cty. of Glenn*, 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010) (quoting *Bassett v. Ruggles*, 2009 WL 2982895, at *24 (E.D. Cal. Sept. 14, 2009)).

### II.    Motion to Dismiss for Failure to State a Claim – Fed. R. Civ. P. 12(b)(6)

A motion to dismiss for failure to state a claim may be granted only when there is no cognizable legal theory to support the claim or when the complaint lacks sufficient factual

allegations to state a facially plausible claim for relief. *Los Angeles Lakers, Inc. v. Federal Insurance Company*, 869 F.3d 795, 800 (9th Cir. 2017). In evaluating the sufficiency of a complaint's factual allegations, the court must accept as true all well-pleaded material facts alleged in the complaint and construe them in the light most favorable to the non-moving party. *Id.* To be entitled to a presumption of truth, allegations in a complaint "may not simply recite the elements of a cause of action, but must contain sufficient allegations of underlying facts to give fair notice and to enable the opposing party to defend itself effectively." *Starr v. Baca*, 652 F.3d 1202, 1216 (9th Cir. 2011). All reasonable inferences from the factual allegations must be drawn in favor of the plaintiff. *Los Angeles Lakers*, 869 F.3d at 800. The court need not, however, credit the plaintiff's legal conclusions that are couched as factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678-79 (2009).

A complaint must contain sufficient factual allegations to "plausibly suggest an entitlement to relief, such that it is not unfair to require the opposing party to be subjected to the expense of discovery and continued litigation." *Starr*, 652 F.3d at 1216. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Self-represented pleadings are held to a less stringent standard than those drafted by lawyers. *See, e.g.*, *Haines v. Kerner*, 404 U.S. 519, 520 (1972). The court, in many circumstances, instructs the self-represented litigant regarding deficiencies in the complaint and grants leave to amend. *Eldridge v. Block*, 832 F.2d 1132, 1136 (9th Cir. 1987). "Although

a [self-represented] litigant . . . may be entitled to great leeway when the court construes his pleadings, those pleadings nonetheless must meet some minimum threshold in providing a defendant with notice of what it is that it allegedly did wrong." *See Brazil v. U.S. Dep't of Navy,* 66 F.3d 193, 199 (9th Cir.1995). A self-represented plaintiff's claims may be dismissed with prejudice only where it appears beyond doubt the plaintiff can prove no set of facts that would entitle them to relief. *Barrett v. Belleque*, 544 F.3d 1060, 1061–62 (9th Cir. 2008).

### DISCUSSION

Defendants move to strike Plaintiff's FAC in its entirety. Alternatively, Defendants move under Fed. R. Civ. P. 12(b)(6) to dismiss all of Plaintiff's claims.

## I.     Defendants' Motion to Strike

Defendants argue that Plaintiff's FAC should be stricken for failure to comply with Fed. R. Civ. P. 15 and LR 15-1.

### A.     Fed. R. Civ. P. 15

Under the Federal Rules of Civil Procedure, a plaintiff can file an amended pleading as a matter of course twenty-one days after service of a Fed. R. Civ. P. 12(b) motion. Fed. R. Civ. P. 15(a)(1)(B). Plaintiff's filing of his FAC is well beyond the twenty-one-day period in which he could have amended his complaint as a matter of course. Defs.' Mot. for More Definite ECF No. 8 (filed June 28, 2024); Plaintiff's FAC ECF No. 16 (filed October 8, 2024). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). Plaintiff did not receive Defendants' written consent to amend his Complaint. However, on October 11, the court Ordered Defendants' response to Plaintiff's FAC due by November 1, 2024. ECF No. 18. In effect, the Court granted Plaintiff leave to amend the Complaint by accepting its filing and setting a deadline for Defendants to respond.

### B. LR 15-1(b)

Defendants also contend that Plaintiff failed to follow the Local Rules when filing his

FAC. Defendants assert that Plaintiff failed to attach a copy of the amended pleading edited to

show how the amended pleading differs from the superseded pleading.

LR 15-1(b) states:

A copy of the proposed amended or amended pleading that shows – through redlining, underlining, strikeouts, or other similarly effective methods – how the amended pleading differs from the operative or superseded pleading must be attached as an exhibit to:
    (1) A motion for leave to file the amended pleading; or
    (2) An amended pleading filed as a matter of course pursuant to Fed. R. Civ. P. 15(a)(1) or with written consent of the opposing parties under Fed. R. Civ. P. 15(a)(2).

The purpose of the exhibit requirement in LR 15-1(b) is to ensure that all parties and the

Court can easily understand what changes were made in the amended pleading. Self-represented

litigants are ordinarily given leave to amend. *Karim-Panahi v. L.A. Police Dep't*, 839 F.2d 621,

623-24 (9th Cir. 1988). Fed. R. Civ. P. 15(a)(2) provides that the "court should freely give leave

[to amend a pleading] when justice so requires." A district court should apply Rule 15's "policy

of favoring amendments . . . with extreme liberality." *Price v. Kramer*, 200 F.3d 1237, 1250 (9th

Cir. 2000) (quotation marks omitted). The purpose of the rule "is 'to facilitate decision on the

merits, rather than on the pleadings or technicalities.'" *Novak v. United States*, 795 F.3d 1012,

1020 (9th Cir. 2015) (quoting *Chudacoff v. Univ. Med. Ctr.*, 649 F.3d 1143, 1152 (9th Cir.

2011)).

Plaintiff's filing of his FAC does not strictly comply with LR 15-1(b). However,

Defendants' briefing demonstrates their understanding of the changes, and the Court can easily

understand what changes were made in the amended pleading as well. Given Plaintiff's status as

a self-represented party, the Court finds it appropriate to liberally construe Plaintiff's filing of the

FAC as compliant with LR 15-1(b). The Court denies Defendants' Motion to Strike Plaintiff's FAC due to failure to comply with LR 15-1(b).

## II.     Defendants' Motion to Dismiss

### A.     Monell Liability

Defendants argue that the § 1983 claims against Sweet Home Fire should be dismissed because Plaintiff fails to allege an official custom, pattern, or policy that caused the deprivation of a right protected by federal law.

Section 1983 permits a cause of action for constitutional violations only against "person[s]." In certain circumstances, a municipality, such as Sweet Home Fire, may be held liable as a "person" under § 1983. *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-91 (1978). However, "a municipality cannot be held liable *solely* because it employs a tortfeasor— or, in other words, a municipality cannot be held liable under § 1983 on a [vicarious liability] theory." *Id.* at 691.

There are three methods by which a plaintiff may establish municipal liability under *Monell*. First, a local government may be liable where the "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflict[s] the injury." *Rodriguez v. City of Los Angeles*, 891 F.3d 776, 802 (9th Cir. 2018) (quoting *Monell*, 436 U.S. at 694). "Second, a local government can fail to train employees in a manner that amounts to 'deliberate indifference' to a constitutional right, such that 'the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the [government entity] can reasonably be said to have been deliberately indifferent to the need.'" *Id.* (quoting *City of Canton v. Harris*, 489 U.S. 378, 390 (1989)). "Third, a local government may be held liable if 'the individual who committed the constitutional tort was an official with final policy-making

authority or such an official ratified a subordinate's unconstitutional decision or action and the basis for it.'" *Id.* at 802-03 (quoting *Gravelet-Blondin v. Shelton*, 728 F.3d 1086, 1097 (9th Cir. 2013)).

Here, Plaintiff alleges no facts supporting liability against Sweet Home Fire under any *Monell* theory. Instead, Plaintiff's allegations only set forth allegations of conduct by Sweet Home Fire employees, so the FAC can only be read to assert claims based on vicarious liability. As noted above, this is insufficient to state a § 1983 claim. Because Plaintiff fails to allege any official custom, pattern, or policy that violated Plaintiff's federal right, Plaintiff's § 1983 claims against Sweet Home Fire are dismissed.

### B.   First Claim – Freedom of Speech and Whistleblowing

Plaintiff's First Claim is a § 1983 claim alleging that Defendants violated Plaintiff's First Amendment rights by retaliating against him for raising concerns about Defendants' allegedly wasteful spending and unlawful conduct. FAC ¶ 156. Defendants argue that Plaintiff's First Claim should be dismissed because the speech at issue is not protected by the First Amendment.

The first inquiry as to whether a public employee's speech is protected under the First Amendment is whether the speech touched on a matter of public concern. "Speech by citizens on matters of public concern lies at the heart of the First Amendment . . . [t]his remains true when speech concerns information related to or learned through public employment." *Lane v. Franks*, 573 U.S. 228, 236 (2014). Speech that involves information or addresses issues that allows the public "to make informed decisions about the operation of their government merits the highest degree of first amendment protection." *McKinley v. City of Eloy*, 705 F.2d 1110, 1114 (9th Cir. 1983) (citing *Thornhill v. Alabama,* 310 U.S. 88, 102, (1940)). Reports of wastefulness, mismanagement, unethical conduct, violations of regulations, or incompetence by government officials are matters of public concern. *Robinson v. York*, 566 F.3d 817, 824 (9th Cir. 2009).

However, not all "matters which transpire within a government office are of public concern . . . [and] the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick v. Myers*, 461 U.S. 138, 149 (1983). Matters that would be of "no relevance to the public's evaluation of the performance of governmental agencies" are generally not matters of public concern. *McKinley*, 705 F.2d at 1114. For example, speech involving individual personnel grievances—such as job duties, pay, work environment, or interpersonal relationships—are not considered matters of public concern. *See Connick*, 461 U.S. at 149; *Ellins v. City of Sierra Madre*, 710 F.3d 1049, 1057-58 (9th Cir. 2013); *Desrochers v. City of San Bernardino*, 572 F.3d 703, 711 (9th Cir. 2009).

Applying the above rules, the Court has reviewed the FAC and finds that Plaintiff has failed to allege any speech directed at a matter of public concern. Rather, the speech at issue falls into the category of speech related to Plaintiff's job duties, work environment, and interpersonal relationships. Such speech by a public employee is not protected by the First Amendment. Plaintiff fails to plausibly state a claim under the First Amendment.

### C.     Second Claim – Due Process

Plaintiff's Second Claim is a § 1983 claim alleging that Defendants violated Plaintiff's Due Process Rights under the Fourteenth Amendment by maliciously creating a Civil Service System to prevent Plaintiff from receiving a public hearing. FAC ¶ 161. Plaintiff alleges that the creation of the Civil Service System was invalid because it was not enacted under the charter, ordinances, or regulations required by Oregon law. FAC ¶ 121. Plaintiff alleges that as a union member, he could choose to resolve employment disputes through either the confidential Civil Service Rules process or the Collective Bargaining Agreement grievance process. FAC ¶ 125. Plaintiff alleges that he submitted a signed request for a Civil Service Hearing. FAC ¶ 122. On

March 9, 2023, Plaintiff delivered a letter requesting to proceed with the grievance process as required in the CBA. FAC Ex. 8, at 1-2, ECF No. 16-1. In that letter, Plaintiff states that "I was provided with notice of potential termination on February 7th, 2023 and I was told that must submit any mitigating circumstances that could be used in the decision for whether or not to terminate me February 13th, 2023." *Id.* at 41. Plaintiff stated that his request for an extension of time to respond was denied. *Id.* On March 29, 2023, Tyler hand delivered a termination letter to Plaintiff stating "I gave you the opportunity for a due process hearing to provide you a chance to give me any additional information or mitigating circumstances as to why termination should not be imposed. You did not attend that meeting and instead email me a document listing . . . grievances." FAC Ex. 9, at 1, ECF No. 16-1. The letter goes on to state that after considering Plaintiff's grievances submitted in place of attending the due process hearing, Tyler's decision to terminate Plaintiff for violations of district policy and workplace expectations remains in place. *Id.* at 4.

    To state a § 1983 claim based upon procedural due process, a plaintiff must allege that the government deprived him of a constitutionally protected liberty or property interest without due process. *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993). Determination of precisely what process a plaintiff is due "'is flexible and calls for such procedural protections as the particular situation demands.'" *Armstrong v. Reynolds*, 22 F.4th 1058, 1078 (9th Cir. 2022) (quoting *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 12 (1979)). "This principle requires 'some kind of a hearing' prior to the discharge of an employee who has a constitutionally protected property interest in his employment." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Board of Regents v. Roth,* 408 U.S., at 569-70)).

Based on Plaintiff's allegations and exhibits attached to the FAC, Plaintiff fails to plausibly allege that he was denied "notice and opportunity for hearing appropriate to the nature of the case." *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 313 (1950). Plaintiff alleges multiple instances of voicing and submitting in writing his objections to the reasons for his termination. The exhibits attached to Plaintiff's complaint describe that prior to termination, Plaintiff was given an opportunity for a hearing to dispute the allegations made against him and that his written statement describing mitigating circumstances was reviewed prior to his termination. FAC Exs. 8, 9. Plaintiff also chose to engage in the formal grievance process provided under the CBA. Plaintiff does not allege that this formal grievance process denied him of the opportunity to be heard. Plaintiff fails to plausibly alleged that he was denied procedural due process.

To state a § 1983 claim based upon substantive due process, a plaintiff must allege that the government deprived him "of life, liberty, or property in such a way that 'shocks the conscience' or 'interferes with rights implicit in the concept of ordered liberty.'" *Nunez v. City of Los Angeles*, 147 F.3d 867, 871 (9th Cir. 1998) (quoting *United States v. Salerno*, 481 U.S. 739, 746 (1987)); *Del Monte Dunes at Monterey, Ltd. v. City of Monterey*, 920 F.2d 1496, 1508 (9th Cir. 1990). Here, Plaintiff fails to plausibly allege that Defendants engaged in any conduct that shocks the conscience or was constitutionally arbitrary.

### D.  Third Claim – Unreasonable Search and Seizure

Plaintiff's Third Claim is a § 1983 claim alleging that Barringer violated Plaintiff's Fourth Amendment rights by using a first responder application installed on Plaintiff's phone to track Plaintiff's location for a non-emergency response purpose. FAC ¶ 175. Plaintiff alleges that on April 18, 2022, he called in sick to work because he was nervous about Barringer being there. FAC ¶ 71-72. Barringer became immediately suspicious that Plaintiff was abusing his use of sick

time. FAC ¶ 72. Barringer located Plaintiff using the first responder application installed on Plaintiff's phone and drove twenty-two miles from work to spy on Plaintiff. FAC ¶ 72. Plaintiff was then placed on administrative leave pending a fit for duty evaluation. FAC ¶ 175.

Defendants move to dismiss "in whole or in part due to the statute of limitations." Defs.' Mot. 6. There is no specified statute of limitations for an action under § 1983. *Wilson v. Garcia*, 471 U.S. 261, 266 (1985); *Pouncil v. Tilton*, 704 F.3d 568, 573 (9th Cir. 2012). For an action under § 1983, "federal courts look to the law of the state in which the cause of action arose and apply the state law of limitations governing [the] analogous cause of action." *Pouncil*, 704 F.3d at 573 (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Claims brought under § 1983 are characterized as personal injury actions. *Wilson*, 471 U.S. at 261. Oregon has a two-year statute of limitations for personal injury torts. ORS 12.110(1). Therefore, Plaintiff's Third Claim has a two-year statute of limitations period.

While state law determines the length of a statute of limitations period, federal law determines when the statute of limitations begins to run for a § 1983 claim. *Pouncil*, 704 F.3d at 573. Under federal law, the statute of limitations for a § 1983 claim begins to run on the date on which the plaintiff's claim accrues. *Wallace*, 549 U.S. at 388; *Pouncil*, 704 F.3d at 573. "[A]ccrual occurs when the plaintiff has a complete and present cause of action and may file a suit to obtain relief." *Pouncil*, 704 F.3d at 573-74 (citations omitted). In other words, a cause of action for a § 1983 claim accrues "when the plaintiff knows or has reason to know of the injury that is the basis of the action." *Id.* at 574 (citing *Bagley v. CMC Real Estate Corp.*, 923 F.2d 758, 760 (9th Cir. 1991)).

Here, Plaintiff's lawsuit was filed on April 10, 2024. As such, Plaintiff's claims must have accrued two years prior, on or after April 10, 2022. Plaintiff alleges that on April 18, 2022,

FAC ¶ 72, Barringer "infringed on the plaintiff's Fourth Amendment Rights by utilizing the

Plaintiff's personal cell phone to track and locate him to penalize him," FAC ¶ 175. The

underlying conduct giving rise to Plaintiff's Third Claim occurred within the two-year statute of

limitations. Defendants did not move to dismiss this claim against Barringer on substantive

grounds.

### E.    Fourth Claim – ORS 243.321

Plaintiff's Fourth Claim is construed as a negligence *per se* claim for the violation of

ORS 243.321. ORS 243.321 states:

> A public employer shall develop written policies and procedures for the prompt investigation of a report of workplace harassment. The policies and procedures must:
>
> (1) Provide instruction for maintaining records of workplace harassment.
>
> (2) Establish a process for a victim of workplace harassment to file a complaint, provided that the process allows a victim to file the complaint within four years from the date on which the alleged harassment occurred or within the applicable time limitation on the commencement of an action under ORS 659A.875, whichever is greater.
>
> (3) Identify the individual designated by the employer who is responsible for receiving reports of prohibited conduct, including an individual designated as an alternate to receive such reports.
>
> (4) Subject to subsection (5) of this section, require the employer to follow up with the victim of the alleged harassment once every three months for the calendar year following the date on which the employer received a report of harassment, to determine whether the alleged harassment has stopped or if the victim has experienced retaliation.
>
> (5) Inform the victim that the employer will follow up in the manner described in subsection (4) of this section until and unless the victim objects to such action in writing.

"Under the doctrine of negligence *per se*, the violation of a statute or rule raises a

rebuttable presumption of negligence if the violation causes an injury to a member of the class of

persons meant to be protected and the injury is of a type which the statute or rule was enacted to

prevent." *Torres v. Pac. Power & Light*, 84 Or. App. 412, 415 (1987). "[N]egligence *per se* is

not a separate claim for relief, but is simply shorthand for a negligence claim in which the standard of care is expressed by a statute or rule." *Abraham v. T. Henry Const., Inc.*, 350 Or. 29, 36 n.5 (2011).

Defendants argue that Plaintiff fails to allege that Defendants did not have such policies or procedures, that he was injured as a result of a violation of the statute, or that he suffered the type of injury that the statute was enacted to prevent. Plaintiff alleges that "Defendants failed to protect employees by creating and performing [p]olicies and procedures that were required under ORS 243.321." FAC ¶ 180. Plaintiff further alleges that:

> Defendants retaliated against Plaintiff after the plaintiff addressed concerns with members of the board of unlawful conduct on the part of the Fire Chiefs, Dave Barringer, and Mark Tyler. The Board failed to intervene in anyway to investigate the conduct of the Fire Chiefs. The board then allowed the Fire Chiefs to continue there [*sic*]unlawful retaliation that ultimately resulted in the termination of the Plaintiff. All Defendants participated in the constructive discharge of Plaintiff for more than 3 years.

FAC ¶ 181.

Plaintiff fails to allege that his injury is of a type which ORS 243.321 was intended to prevent. The statue is intended to ensure that public employers have "policies and procedures for the prompt investigation of a report of workplace harassment." ORS 243.321.  Plaintiff does not allege that a lack of policies or procedures for reporting harassment harmed him. Rather, he alleges that he reported Defendants' unlawful conduct and was harmed by their retaliatory response. The type of injury alleged by Plaintiff is not protected by ORS 243.321.

### F.    Fifth Claim – ORS 659.800 and 659.805.

Plaintiff's Fifth Claim is an Oregon statutory claim under ORS 659.800 and 659.805. Defendants move to dismiss Plaintiff's Fifth Claim because Plaintiff alleges facts that are insufficient to state a claim under ORS 659.800 or ORS 659.805.

ORS 659.800 states that:

> (1) No person shall, by force, threats, or intimidation, prevent, or
> endeavor to prevent, any person employed by another from
> continuing or performing work, or from accepting any new work or
> employment.
>
> (2) No person shall circulate any false written or printed matter, or
> be concerned in the circulation of any such matter, to induce others
> not to buy from or sell to or have dealings with any person, for the
> purpose or with the intent to prevent such person from employing
> any person, or to force or compel such person to employ or discharge
> from employment anyone, or to alter the mode of carrying on
> business, or to limit or increase the number of employees or the rate
> of wages or time of service.

Similarly, ORS 659.805 prohibits the "blacklisting" of terminated employees. Oregon courts have defined blacklisting as the intent to injure a person by preventing them from securing future employment. *Mink v. Marion Cnty. Juvenile Dep't*, No. 08-6298-AA, 2009 WL 5173513 (D. Or. Dec. 18, 2009) (citing *Johnson v. Oregon Stevedoring Co.,* 128 Or. 121, 139, (1928)). "[I]f one is prevented by the wrongful act of a third party from securing some employment he has sought, he suffers a legal wrong, provided he can show that the failure to employ him was the direct and natural consequence of the wrongful act." *Johnson*, 128 Or. at 135 (quotation marks and citation omitted). In order to prevail on a claim for blacklisting, a plaintiff must submit evidence of a wrongful act and a malicious intent. *Mink*, 2009 WL 5173513, at *12-13.

Plaintiff alleges that he was offered a conditional job offer from the Salem Fire Department. FAC ¶ 187. Plaintiff alleges that the background investigator stated he would call Plaintiff's ten witnesses, but that he would contact Tyler first. *Id.* Plaintiff alleges that the investigator contacted Tyler, "and all of Plaintiff's witnesses were kept from being called." *Id.* Plaintiff was then informed that his conditional job offer had been rescinded. *Id.* Plaintiff alleges that the investigator's contact with Tyler "intentionally prevented [him] from obtaining employment with a respectable fire department in Oregon." *Id.*

Plaintiff fails to allege facts showing Tyler committed a "wrongful act" or dispersed "false written or printed matter" with the intent to injure Plaintiff by preventing his ability to obtain future employment. ORS 659.800; ORS 659.805; *Johnson*, 128 Or. at 135. Plaintiff also fails to plausibly allege that Salem Fire Department's "failure to employ him was the direct and natural consequence of the wrongful act." *Johnson*, 128 Or. at 135. Plaintiff fails to allege facts of a malicious intent or wrongful act, and instead he simply describes how Tyler was contacted as a reference, and that Plaintiff's job offer was rescinded. *Id.* at 127 (no conspiracy to blacklist employees where employer published a list of discharged employees and reason for discharge). Plaintiff fails to plausibly allege his Fifth Claim for relief.

### G.      Sixth Claim – ORS 192.329

Plaintiff Sixth Claim alleges that Tyler and Doney violated ORS 192.329 by failing to provide original and accurate public records and by refusing to acknowledge the existence of these records. *Id.* ¶ 195. Defendants argue that Plaintiff fails to plausibly state a claim.

ORS 192.329 generally provides how a public body is to respond to records requests, including timelines for producing documents, exemptions, and fees. "Oregon has a strong and long-standing policy that public records and governmental activities be open to the public." *Merrick v. City of Portland*, 313 Or. App. 647, 656 (2021). "A person who has requested public records from a local public body may seek review of the public body's actions by petitioning the district attorney for review at various points." *Id.* at 656-57. The Oregon Court of Appeals explains that "[a] requester may petition the district attorney when the person believes the public body has failed to respond as soon as practicable or without unreasonable delay." *Id.* at 657 (citing ORS 192.329(1) and ORS 192.407(1)(a)-(b)). "Depending on whether the district attorney grants or denies a requester's petition, or fails to act within seven days, either the city or

the requester can institute proceedings for injunctive or declaratory relief with the circuit court of the county where the public record is held." *Id.*

Here, Plaintiff alleges that following a series of disputes with his supervisor, Doney was hired to conduct an investigation into whether Plaintiff had committed any policy violations. FAC ¶ 6. Plaintiff alleges that during this investigation, "Defendants Doney and Tyler wilfully [*sic*] omitted exculpatory evidence, including the exonerating testimony from Jane Doe. Plaintiff had requested on at least 6 occasions information on the interview with Jane Doe and has still not received it." FAC ¶ 192. Plaintiff alleges that Doney did provide him with a twenty-page summary of the investigation, but this summary omitted any mention that Jane Doe was interviewed or how "she provided exonerated evidence in favor of [him] and revealed information of a [s]exual [h]arassment complaint that was covered up by management against the [u]nion [p]resident . . . ." *Id.*

Plaintiff fails to allege that he made a public records request according to "the public body's procedure." ORS 192.329. Nor does Plaintiff allege following Defendants' allegedly insufficient response to his purported public records request he filed a petition to the district attorney. Plaintiff also fails to allege that his petition to the district attorney was denied prior to seeking judicial intervention. Plaintiff fails to state a claim for the failure to comply with a public records request.

## H.    Seventh Claim – ORS 659A.043

Plaintiff's Seventh Claim is an Oregon statutory claim under ORS 659A.043. Defendants move to dismiss Plaintiff's Seventh Claim arguing that Plaintiff fails to allege facts sufficient to support a claim.

ORS 659A.043 provides that "a worker who has sustained a compensable injury shall be reinstated upon demand for reinstatement, if the position exists and is available and the worker is

not disabled from performing the duties of such position." "Generally, a 'compensable injury' is an accidental injury that 'arises out of and in the course of employment.'" *Petock v. Asante*, 351 Or. 408, 419 (2011) (quoting *Armstrong v. Rogue Fed. Credit Union*, 328 Or. 154, 159 (1998))

Plaintiff alleges that Defendants were required to allow him to return to work within seven days after he had been cleared to return by his doctor on May 15, 2022. FAC ¶ 197. Plaintiff alleges that he was never allowed to return to work, and that instead, on August 4, 2022, Defendants opened up an internal investigation regarding the "the [p]olicy [v]iolations they claim [P]laintiff violated." *Id.*

Plaintiff's alleged injury appears to have been anxiety caused by the 2012 modified HIV results. FAC ¶¶ 81, 86. However, the right to reinstatement "terminates when "[t]hree years elapse from the date of injury." *Petock*, 351 Or. at 418 (quoting ORS 659A.043(3)(a)(F)). Plaintiff does allege that this injury was aggravated such that his right to reinstatement had not elapsed in 2022. Nor does Plaintiff allege that he suffered a compensable injury, that he demanded reinstatement, and that his position existed and was available. Plaintiff fails to state a claim under ORS 659A.043.

## I.      Eighth Claim – "ORS 242.702 to 242.824"

Plaintiff's Eighth Claim alleges that Defendants prevent Plaintiff from receiving a civil service hearing as required under ORS 242.804 and improperly enacted rules which violated the charter ordinance or regulation of the civil service commission as required under ORS 242.704. FAC ¶ 201. Defendants argue that Plaintiff lacks standing to challenge the allegedly improper creation of a civil service commission.

The U.S. Constitution confers limited authority on the federal courts to hear only active cases or controversies brought by persons who demonstrate standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 337-38 (2016);  To establish standing, a plaintiff must show: (1) an injury in fact, *i.e.*,

an invasion of a legally protected interest that is concrete and particularized, as well as actual or

imminent harm; (2) a causal connection between the injury-in-fact and the defendant's

challenged behavior; and (3) likelihood that the injury-in-fact will be redressed by a favorable

ruling. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180-81

(2000); *see also Spokeo*, 578 U.S. at 338 (reiterating that the "irreducible constitutional

minimum" of standing consists of "an injury in fact ... fairly traceable to the challenged conduct

of the defendant, and . . . likely to be redressed by a favorable judicial decision") (citation

omitted).

Defendants' standing argument misconstrues the nature of Plaintiff's claim. Rather than

challenging the creation of a civil service system, Plaintiff seeks redress for the harm caused by

Defendants' refusal to adequately respond to his written demand for an investigation and hearing

following his receipt of a notice of potential termination. FAC ¶ 201. Under ORS 242.800:

> Any permanent employee who has been dismissed, demoted, suspended without
> pay or deprived of special privileges may, within 10 days, file with the commission
> a signed written demand for an investigation. If the demand alleges, or if it
> otherwise appears to the commission, that the dismissal was not made in good faith
> for cause, the commission shall conduct an investigation and hold a public hearing,
> such hearing to be within 30 days from the time appeal is filed.

Construed liberally in favor of a non-moving self-represented party, Plaintiff alleges that

his employment was protected by the rules of the civil service commission and that Defendants'

alleged failure to adequately respond to his written demand for an investigation and hearing

violated his legal rights under ORS 242.800. Plaintiff adequately alleges that Defendants caused

a legally cognizable injury. Regarding redress, ORS 242.804 provides that "[a]ny decision of the

commission affecting any permanent employee or employees subject to ORS 242.702 to 242.824

may be appealed" and the court shall determine "whether the order of removal, discharge,

demotion or suspension made by the commission was made in good faith for cause." ORS

242.804(1), (3). This Court has supplemental jurisdiction over Plaintiff's state law claims and may therefore hear and redress Plaintiff's appeal. Plaintiff adequately alleges that he was entitled to the rights protected by the civil service system.

When ruling on a motion to dismiss, the Court must accept as true Plaintiff's allegations. Whether Plaintiff is in fact subject to the protections of a civil service system, whether he was placed on administrative leave or discharged by the commission, and if so, whether those decisions were made in good faith for cause is yet to be determined. Plaintiff's eighth claim is plausibly alleged.

### J.    Ninth Claim – ORS 653.436

Plaintiff's Ninth Claim[1] alleges that Defendants "knowingly and deliberately chang[ing] [Plaintiff's] work schedule against the Union Contract and ORS 653.436 in an effort to force [P]laintiff to resign." FAC ¶ 207.

ORS 653.436 states that "an employer shall provide an employee" specific requirements for advance notice of work schedule changes. An "employee" for purposes of ORS 653.436 is limited to non-salary employees of retail, hospitality, and food service establishments with 500 or more employees. ORS 653.422; ORS653.412(2)(a). Plaintiff's allegations show that he is not a covered employee.

## III.    Leave to Amend

"[A] district court may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, and futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010)

---

[1] Plaintiff mistakenly pleads a second "Eighth Claim." *See* FAC ¶ 206-09. Here, the Court will refer to this claim as Plaintiff's "Ninth Claim" for clarity

(quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). Plaintiff's repeated failure to timely respond in this matter amount to undue delay and weighs in favor of denying leave to amend. Moreover, the Court finds that allowing leave to amend would be futile as the reasons for dismissal cannot be cured by amendment. For example, because Plaintiff was employed as a first responder, no good faith amendment to Claim Nine can plausibly show that he was an employee covered by the protections of ORS 653.436. Plaintiff's First, Second, Fourth, Fifth, Sixth, Seventh, and Ninth Claims are dismissed with prejudice. Plaintiff's Third Claim against Sweet Home Fire is also dismissed with prejudice.

## CONCLUSION

For the reasons above, Defendants' Motion to Strike (ECF No. 20) is DENIED. Defendants' Motion to Dismiss (ECF No. 20) is GRANTED in part and DENIED in part. Plaintiff's Third Claim against Defendant Barringer and Plaintiff's Eighth Claim against Defendants Sweet Home Fire and Tyler may proceed. However, all remaining claims and Defendants are dismissed with prejudice.

DATED this 2nd day of May 2025.


s/ Mustafa T. Kasubhai
MUSTAFA T. KASUBHAI (He / Him)
United States District Judge